**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **WELLS FARGO BANK, N.A.,** | * | |
| | * | |
| *Plaintiff,* | * | |
| | | |
| v. | * | Civil Case No: 1:22-cv-02487-JRR |
| | | |
| **GATEWAY INTERNATIONAL LOGISTICS, INC.,** | | |
| | * | |
| *Defendant.* | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## REPORT AND RECOMMENDATIONS

This Report and Recommendations addresses Plaintiff Wells Fargo Bank, N.A.'s Motion for Entry of Default Judgment Pursuant to Rule 55(b)(2)) (ECF No. 10).  On February 27, 2023, in accordance with 28 U.S.C. § 636 and Local Rules 301–02, Judge Rubin referred this breach of contract case to the undersigned to review Plaintiff's Motion and to "mak[e] recommendations concerning damages."  (ECF No. 13).  The undersigned has reviewed Plaintiff's Motion, the accompanying attachments, and the supplemental filings to the Motion (ECF Nos. 11 & 12)[1].  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons set forth below, I respectfully recommend that Plaintiff's Motion for Default Judgment be GRANTED in part and that damages be awarded as set forth herein.

---

[1] Plaintiff's supplemental filings include the same copy of the check and deposit account agreement included as attachments to the Complaint.  (ECF No. 11).  Plaintiff's supplemental filings also include invoices and billing documentation  to support Plaintiff's request for attorney's fees and costs.  (ECF No. 12).

## I.      BACKGROUND

On October 4, 2022, Plaintiff filed its Complaint for breach of contract or, in the alternative, unjust enrichment against Defendant Gateway International Logistics, Inc.  (ECF No. 1).  The Complaint alleges that Defendant "is a Maryland corporation with its principal place of business in Columbia, Maryland."  *Id.* at p. 1, ¶ 2.[2]  On October 5, 2022, the Clerk of this Court issued summons as to Defendant (ECF No. 3), and Plaintiff filed a return of summons on October 19, 2022 (ECF No. 4).  The return of summons indicated that on October 12, 2022, summons was executed through personal service on Defendant's registered agent, Fabion Harris.  *Id.* at p. 2.  Therefore, Defendant's response to the Complaint was due on November 2, 2022.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("*In General* . . . [a] defendant must serve an answer . . . within 21 days after being served with the summons and complaint . . . .") (emphasis in original).  However, Defendant failed to respond to the Complaint by November 2, 2022.  Based on Defendants' failure to plead or otherwise defend, Plaintiff filed a Request for Entry of Default (ECF No. 5) on November 11, 2022.  On November 18, 2022, the Clerk entered "default for want of answer or other defense by Defendant . . . ."  (ECF No. 6).  Accordingly, on November 18, 2022, the Clerk mailed Defendant a Notice of Default[3] (ECF No. 7) indicating that Defendant had thirty (30) days to file a motion to vacate the Clerk's Order of Default.  In the Notice of Default, Defendant was warned that if it failed to file such a motion, "the Court will act promptly on any pending motions for entry of default judgment, which may result in a monetary judgment against you."  *Id.*

---

[2] When the undersigned cites to a specific page number, the undersigned is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

[3] On November 30, 2023, the Clerk's Notice of Default was returned as undeliverable.  (ECF No. 8).  However, in Plaintiff's Request for Entry of Default (ECF No. 5), Plaintiff provided Defendant's last known address, as required under Loc. R. 108.2 (D. Md. 2021).

As of February 2023, despite service of summons and the Clerk's Order of Default, Defendant still had not responded to the Complaint. Therefore, on February 3, 2023, Plaintiff filed its Motion for Default Judgment (ECF No. 10), and Plaintiff filed supplements (ECF Nos. 11 & 12) to its Motion on February 6, 2023. As of the filing of this Report and Recommendations, Defendant has not filed a response to the Complaint.

Regarding the allegations in Plaintiff's Complaint, the case *sub judice* presents as a straightforward breach of contract case. At all times relevant to this case, Defendant maintained a Wells Fargo Business Choice Checking account ("the Account") with Plaintiff. (ECF No. 1 at p. 2, ¶ 5). The Account ended in numbers 2328. *Id.* Rodney Armstrong and Fabion Harris were the only authorized signers for the Account. *Id.* at p. 2, ¶ 6. On August 13, 2021, a check for $390,000.00 ("the check") was deposited into the Account at an ATM in Columbia, Maryland. *Id.* at p. 2, ¶ 7. The check was issued by Williams Brian. (ECF No. 1 at p. 2, ¶ 7; ECF No. 1-1, Copy of Check, at p. 2). Upon the deposit of the check into the Account, Plaintiff provided Defendant with provisional access to the proceeds of the check, and Defendant wired the majority of those proceeds out of the Account on August 16, 2021. *Id.* at p. 2, ¶ 8. Following Defendant's transfer of the proceeds out of the Account, Plaintiff discovered that the check was counterfeit. *Id.* at p. 2, ¶ 9. Therefore, the check was not paid by the U.S. Bank, and Plaintiff debited the funds from the Account. *Id.* Debiting the funds resulted in an overdraft of the Account. *Id.* Plaintiff measures its principal loss as the negative balance of the Account, inclusive of all fees and credits. *Id.* at p. 2, ¶ 10. Plaintiff has calculated its total principal loss to be $330,768.21 (the "Overdraft Loss"). *Id.* Despite Plaintiff's demands, Defendant has refused to reimburse Plaintiff for the Overdraft Loss. *Id.* at p. 2, ¶ 11.

3

Attached to and incorporated in the Complaint is a copy of the Deposit Account Agreement ("the Agreement") that established the Account. (ECF No. 1 at p. 3, ¶ 15; ECF No. 1-2, the Agreement). Plaintiff has also included a copy of the check. (ECF No. 1-1). At all times relevant to the Complaint, Defendant was governed by the Agreement. (ECF No. 1 at p. 3, ¶ 15). Pursuant to the terms of the Agreement, Defendant is required to deposit sufficient funds to cover any overdraft and any service charges in the Account. *Id.* at p. 3, ¶ 16. Furthermore, pursuant to the terms of the Agreement, Plaintiff is entitled to recover attorney's fees and costs against Defendant incurred in connection with this action. (ECF No. 1 at p. 3, ¶ 20).[4] Plaintiff contends that it has suffered monetary damages as a result of Defendant's failure to return the Account to a positive balance. *Id.* at p. 3, ¶¶ 17 & 19. Plaintiff avers that such a failure by Defendant amounts to a breach of the Agreement. *Id.* at p. 3, ¶ 17.

## II.   LEGAL STANDARD

### A.  Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Rule 55 of the Federal rules of Civil Procedure establishes a two-step process for obtaining a default judgment." *ME2 Prods., Inc. v. Ahmed*, 289 F. Supp. 3d 760, 762 (W.D. Va. 2018) (other citation omitted). First, "the [C]lerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, a party may move the Court for default judgment under

---

[4] The Agreement provides,

> Except to the extent we fail to exercise ordinary care or to comply with this Agreement, you agree to indemnify and hold us harmless from all claims, demands, losses, liabilities, judgments, and expenses (including attorney's fees and expenses) arising out of or in any way connected with our performance under this Agreement. This indemnification will survive termination of this Agreement.

(ECF No. 1-2 at p. 39).

Rule 55(b).  Thereafter, "the court may enter default judgment at the plaintiff's request and with notice to the defaulting party."  *Basba v. Liu Xuegie*, No. 8:19-cv-380-PX, 2021 WL 242495, at *2 (D. Md. Jan. 25, 2021) (citing Fed. R. Civ. P. 55(b)(2)).  "Entry of default judgment is left to the discretion of the court."  *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (other citation omitted).  Although the Fourth Circuit has a strong policy that cases be decided on their merits, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party."  *Id.* (other citations omitted).

"A plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded."  *Basba*, 2021 WL 242495, at *2.  Rather, "when considering a motion for default judgment, the Court takes as true all well-pleaded factual allegations in the complaint, other than those pertaining to damages."  *Id.* at *3 (citing Fed. R. Civ. P. 8(b)(6); *Ryan Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citation and internal quotation marks omitted)).   "District courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'"  *Basba*, 2021 WL 242495, at *3 (citing *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 531, 544 (D. Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at *2–3 (D. Md. Apr. 9, 2012); *U.S. v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832, at *2–3 (D. Md. Oct. 27, 2011)).  "Where a complaint offers only labels and conclusions[,] or naked assertion[s] devoid of further factual enhancement, the allegations therein are not well-

pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied." *Basba*, 2021 WL 242495, at *3 (other citation and internal quotation marks omitted).

If liability is established, the Court proceeds to assess damages. However, the Court cannot solely rely on a complaint to assess damages. *See Trs. Of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). A Court may only award damages without a hearing if the record supports the damages Plaintiff requests. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09-cv-00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages . . ." after default judgment was entered because the plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages plaintiff sought).

**B. Jurisdiction and Venue**

As a preliminary matter, the undersigned finds that jurisdiction and venue are proper. The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). This independent obligation to confirm the existence of subject matter jurisdiction is especially  important when considering a motion for default judgment. Here, Plaintiff alleges that this Court has subject matter jurisdiction pursuant to the diversity of citizenship jurisdiction established by 28 U.S.C. § 1332. (ECF No. 1 at p. 1, ¶ 3). Pursuant to 28 U.S.C. § 1332, federal district courts have jurisdiction to hear "civil actions where the matter in controversy exceeds the sum or value of $75,000[.00], exclusive of interest and costs, and is

between . . . citizens of different States."   Regarding diversity of citizenship jurisdiction, the diversity requirement demands "complete diversity among the parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant."  *Cent. W. Va. Energy Co. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (other citation omitted).  For purposes of determining whether there is complete diversity, a corporation "shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ."  28 U.S.C. § 1332(c)(1).  Plaintiff has sufficiently pleaded complete diversity, and the amount in controversy clearly exceeds $75,000.00.[5]  *See* (ECF No. 1 at p. 1, ¶¶ 1–3).

Regarding personal jurisdiction over Defendant, "the paradigm forum for the exercise of general jurisdiction . . . for a corporation . . . [is] one in which the corporation is fairly regarded as at home."  *Barnett v. Surefire Med., Inc.*, No. JFM-17-1332, 2017 WL 4279497, at *2 (D. Md. Sept. 25, 2017) (other citation omitted).  "In the context of a corporation, the paradigm bases for general jurisdiction are the place of incorporation and principal places of business."  *Id.* (other citations and internal quotation marks omitted).   Plaintiff has alleged that Defendant is incorporated in Maryland and has its principal place of business therein.  (ECF No. 1 at p. 1, ¶ 2).  Therefore, the Court possesses personal jurisdiction over Defendant.

Lastly, regarding venue, 28 U.S.C. § 1391(b) provides that a civil action may be brought in:

---

[5] Although Plaintiff does not indicate under which state's laws it is incorporated, the undersigned recognizes that the Maryland State Department of Assessments and Taxation ("SDAT") classifies Plaintiff as a "foreign corporation." MARYLAND BUSINESS EXPRESS, *General Information*, https://egov.maryland.gov/BusinessExpress/EntitySearch/Business (last visited Mar. 9, 2023). ).  Furthermore, SDAT recognizes Plaintiff's state of formation as "US." *Id.* Under Maryland law, "'foreign corporation' means a corporation, association, or joint-stock company organized under the laws of the United States, another state of the United States, a territory, possession, or district of the United States, or a foreign country." MD. CODE. ANN. CORPS. & ASS'NS § 1-101 (West 2022).  The undersigned is satisfied that Plaintiff is not incorporated under Maryland law. Therefore, complete diversity exists.

1.  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

2.  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is instituted; or

3.  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiff has alleged that Defendant is incorporated in Maryland and has its principal place of business therein.  (ECF No. 1 at p. 1, ¶ 2).  Furthermore, the events giving rise to the case *sub judice* occurred in Maryland.  (ECF No. 1).  Accordingly, venue is proper in the District of Maryland.

### C. Choice of Law

As another preliminary matter, the undersigned must determine which state's substantive law to apply.  "Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit."  *Havtech, LLC v. AAON Inc.*, No. SAG-22-00453, 2022 WL 1213476, at *4 (D. Md. Apr. 25, 2022) (citing *Klaxon Co. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  "In Maryland, a contractual claim . . . is governed by the law of the place where the contract is made, which is the place where the last act required to make a contract binding occurs."  *Schwartz v. Rent A Wreck of Am., Inc.*, 468 Fed. Appx. 238, 256 (4th Cir. 2012) (quoting *Harte–Hanks Direct Mktg./Balt., Inc. v. Varilease Techn. Fin. Gr., Inc.*, 299 F. Supp. 2d 505, 518, n. 13 (D. Md. 2004)).  In other words, "Maryland follows the doctrine of *lex loci contractus*, applying the substantive law of the place where the contract was formed . . . ."  *Basba*, 2021 WL 242495, at *3 (other citations omitted).

Here, Plaintiff makes almost no indication regarding which state's substantive law the Court should apply.[6]  Even more concerning, Plaintiff's Motion is devoid of any mention of, or citation to, caselaw indicating the elements required to establish a breach of contract in any state. Furthermore, Plaintiff has alleged no facts in its Complaint regarding where the Agreement was formed.  Therefore, there is insufficient information in the Complaint to determine where the "last act" to make the contract binding occurred.  Despite this insufficiency in Plaintiff's Complaint and filings, the Court recognizes that Defendant's principal place of business is located in Maryland, and Plaintiff's principal place of business is located in South Dakota.  (ECF No. 1 at p. 1, ¶¶ 1–2). Accordingly, it is reasonable to assume that the Agreement between Plaintiff and Defendant would be governed by either Maryland law or South Dakota law.  *See LPS Default Sols., Inc. v. Friedman & MacFadyen, P.A.*, No. WDQ-13-0794, 2013 WL 4541281, at *3 (D. Md. Aug. 23, 2023) ("However, it is reasonable to assume the contract between [the plaintiff] and [the defendant] would be governed by either Maryland law ([the defendant's] principal place of business) or Minnesota [law] ([the plaintiff's] principal place of business).").  As will be set forth in the undersigned's analysis, Maryland law and South Dakota law governing simple breaches of contract are practically equivalent, so Plaintiff's breach of contract claim can be evaluated without determining which state's laws the Court should apply.

Regarding damages, the undersigned can adequately determine damages due to the similarity in Maryland law and South Dakota law.  "[F]or breach of contract claims, Maryland courts generally award damages which will place the injured party in the monetary position he

---

[6] Plaintiff gives the Court only two insights into which state's substantive law Plaintiff wants the Court to apply to Plaintiff's Motion.  The first is Plaintiff's citation to MD. CODE. ANN. COM. LAW. § 12-102.  (ECF No. 10-1 at p. 5). Plaintiff cites this statute when requesting prejudgment interest at 6% per annum.  *Id.*  The second comes in Mr. Abbruscato's declaration wherein Mr. Abbruscato cites to Maryland Attorneys' Rule of Professional conduct 19-301.5 and its applicability to a request for attorneys' fees.  (ECF No. 10-3 at p. 5, ¶ 15).

would have occupied if the contract had been properly performed." *Cook v. SCI Md. Funeral Servs. Inc.*, No. 14-3770-GLR, 2016 WL 890298, at *6 (D. Md. Mar. 9, 2016) (other citation omitted). Under South Dakota law, "the [u]ltimate purpose behind allowance of damages for breach of contract is to place the injured party in the position he or she would have occupied if the contract had been performed . . . ." *Excel Underground, Inc. v. Brant Lake Sanitary Dist.*, 941 N.W.2d 791, 804 (S.D. 2020) (quoting *Stern Oil Co., Inc. v. Brown*, 908 N.W.2d 144, 151 (S.D. 2018)). Regardless of whether the undersigned applies Maryland law or South Dakota law in determining compensatory damages, the analysis will not change.

Regarding prejudgment interest, whether a court will award prejudgment interest "[i]n a diversity case . . . is a matter of state substantive law." *LPS Default Solutions, Inc.*, 2013 WL 4541281, at *3 (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999)). Maryland law maintains "three basic rules governing the allowance of pre-judgment interest." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 311 (4th Cir.2020) (quoting *Harford Cty. v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73 (2007)). Under Maryland Law:

1. Prejudgment interest *must* be granted where the obligation to pay and the amount due were certain, definite, and liquidated by a specific date prior to judgment. . . . Interest accrues from when payment was due[;]

2. Prejudgment interest *may not* be granted in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement[; and]

3. Prejudgment interest *may* be granted, but is not required, in the remaining broad category of contract cases. . . . In this catchall category, which is the default for contract cases, . . . whether to order prejudgment interest is within the discretion of the trier of fact.

*Parkway*, 961 F.3d at 311 (emphasis in original) (internal citations and quotation marks omitted). However, South Dakota law provides for a mandatory award of prejudgment interest. "In South Dakota, an entity entitled to recover damages . . . is entitled to recover interest thereon

from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt." *Equity Partners HG, LLC v. Samson, Inc.*, No. 18-5006-JLV, 2020 WL 1150364, at *8 (D.S.D. Mar. 10, 2020) (citing SDCL § 21-1-13.1)). "Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate of interest specified in § 54-3-16." *Sampson v. U.S. Dep't of Interior*, No. 1:20- CV-01016-CBK, 2020 WL 7211199, at *5 (D.S.D. Dec. 7, 2020), *aff'd*, No. 20-3708, 2021 WL 3732362 (8th Cir. Aug. 24, 2021) (citing SDCL 21-1-13.1).  Pursuant to SDCL 54-3-16(2), the Category B rate is 10% per annum.  With such discrepancies between Maryland law and South Dakota law regarding prejudgment interest, the undersigned cannot determine the amount of prejudgment interest to award, if any, without Plaintiff providing facts that clarify which state's substantive law applies. The undersigned will provide a recommendation below concerning how Plaintiff can rectify this issue.

Regarding attorneys' fees and costs in a diversity case, "absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorney's fees but also the method of determining those fees." *Rohn Prods. Intern., LC v. Sofitel Cap. Corp. USA, Inc.*, No. WDQ-06-504, 2010 WL 3943747, at *4, n. 13 (D. Md. Oct. 7, 2010) (citing *Dunkin' Donuts Inc., v. Guang Chyi Liu*, 2002 WL 31375509, at *2 (E.D. Pa. Oct. 17, 2002) (other citation omitted)).  Furthermore, "it is not necessarily clear whether the state law that governs an award of attorney's fees is the law of the forum state, or instead, the law of another state that is applicable to the substantive issues being litigated, under the forum state's choice-of-law rules." *Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.*, No. ELH-10-3226, 2011 WL 6444980, at *1, n. 2 (D. Md. Dec. 20, 2011) (citing *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 796–97 (8th Cir.

2005) ("[O]ur conclusion that the matter of attorney's fees is 'substantive' for purposes of [the Erie Doctrine]—such that state rather than federal law governs—does not necessarily establish that the issue of attorney's fees is 'substantive' rather than 'procedural' for purposes of conflict of laws. The two inquiries are distinct.") (other citation omitted)).  Fortunately, as will be further explained in the undersigned's attorneys' fees and costs analysis, the method for determining reasonable attorneys' fees under South Dakota law, Maryland law, and the precedent followed in the Fourth Circuit are sufficiently similar to allow the undersigned to determine reasonable attorneys' fees in this instance.

III.     **ANALYSIS**

   **A. Adequacy of Plaintiff's Allegations**

      **1.   Count I – Breach of Contract**

Whether considered under Maryland law or South Dakota law, Plaintiff's Complaint establishes a claim for breach of contract against Defendant.  "To prevail  in an action for breach of contract [under Maryland law], a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Jaguar Land Rover N. Am., LLC. v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 649 (D. Md. 2010) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)).  To prove a breach of contract under South Dakota law, a plaintiff must show that "1) an enforceable promise existed; 2) the defendant breached the contract; and 3) damages resulted from defendant's breach of the contract." *Assist. Fin. Servs., Inc. v. Freight One Transp., Inc.*, No. 4:20-CV-4015, 2022 WL 392863, at *2 (D.S.D. Feb. 9, 2022) (other citation omitted).

Here, Plaintiff has alleged the existence of an Agreement between Plaintiff and Defendant which established the Account.  Specifically, Plaintiff's Complaint (ECF No. 1) and the Affidavit

of Cynthia Bennett-Parks[7] (ECF No. 10-2) establish that "[a]t all times material, Gateway was (and continues to be) governed by the certain Wells Fargo Deposit Agreement [(the Agreement)] effective May 28, 2021 . . . ."[8]  Accordingly, a contract existed between the parties in the form of the Agreement.  Furthermore, the Complaint alleges that "[p]ursuant to the terms of [the Agreement], Gateway is required to deposit sufficient funds to cover any overdraft and any service charges in the Gateway Account."[9]  (ECF No. 1 at p. 3, ¶ 16).  After the check was deposited and Plaintiff subsequently discovered that the check was counterfeit, an overdraft occurred on the Account.  The overdraft resulted in a principal loss to Plaintiff in the amount of $330,768.21.  (ECF Nos. 1 & 10-2).  Defendant's failure to return the Account to a positive balance resulted in a breach of the Agreement and further resulted in Plaintiff's principal loss.  *Id.*  Under Maryland law, the Complaint clearly establishes that Defendant owed Plaintiff a contractual obligation and breached that obligation.  Under South Dakota law, the Complaint clearly establishes that an enforceable promise existed between Plaintiff and Defendant, Defendant breached the contract, and damages resulted from the breach.  *See Petrone*, 2022 WL 9353510 (finding breach of contract in an

---

[7] Ms. Parks is the Senior Fraud and Claims Operations Consultant for Plaintiff.  (ECF No. 10-2 at p. 2, ¶ 2).

[8] The undersigned recognizes that the copies of the Agreement provided by Plaintiff do not include signatures from any party involved in the Agreement.  However, the undersigned, considering the allegations of the Complaint and Ms. Parks' representation in her affidavit, and further considering the existence of the Account itself, has no issue concluding that the Agreement existed between Plaintiff and Defendant, and the Agreement governed the Account. Lending further support to this conclusion is a case out of the United States District Court for the Eastern District of Virginia: *Wells Fargo Bank, N.A. v. Petrone*, No. 2:22cv164, 2022 WL 9353510 (E.D. Va. Oct. 14, 2022).  *Petrone* is a case that was brought by Plaintiff and is nearly factually identical to the case *sub judice*.  Applying Virginia's breach of contract law—which is practically indistinguishable from Maryland's or South Dakota's breach of contract laws—the court in *Petrone* found that Plaintiff "alleged sufficient facts to satisfy all elements of a valid breach of contract claim under Virginia law."  *Petrone*, 2022 WL 9353510, at *2.  The undersigned has reviewed the docket in *Petrone* and recognize that the agreement Plaintiff depended on in *Petrone* also lacked signatures from any party.  The lack of signatures did not deter the *Petrone* court from finding that a legally enforceable obligation existed between Plaintiff and the defendant, and the undersigned is not deterred from concluding the same.

[9] Plaintiff's Complaint, Ms. Parks' Affidavit, and Plaintiff's Motion each reference the Agreement.  However, Plaintiffs never point to specific language in the 40-page Agreement.  Nonetheless, the undersigned recognizes that the Agreement provides, "If your account has an overdraft, you must promptly add money to return your account to a positive balance."  (ECF No. 1-2 at p. 12).

overdraft case where an agreement created an account, the defendant failed to satisfy her obligation to maintain sufficient funds to cover an overdraft, and the plaintiff—the same Plaintiff in the case *sub judice*—suffered a six-figure principal loss).

For the foregoing reasons, the undersigned recommends that the Court enter default judgment against Defendant as to Count I.

### 2. Count II – Unjust Enrichment (In the Alternative to Count I)

Plaintiff's Motion requests default judgment as to Count I only. "In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties." *PNC Bank v. Chatani*, No. WDQ-13-1202, 2013 WL 4541486, at *2 (D. Md. Aug. 23, 2013). Similarly, under South Dakota law, "[a] request for relief because of unjust enrichment sounds in equity . . . , and it is well settled that [a]n essential element to equitable relief is the lack of an adequate remedy at law." *Paweltzki v. Paweltzki*, 964 N.W.2d 756, 769 (S.D. 2021). Having found that a contract existed between Plaintiff and Defendant in the form of the Agreement, the undersigned concludes that the consideration of Count II is unnecessary.

### B. Damages and Interest

#### 1. Damages

As discussed above, after finding that the allegations support a default judgment, the Court must assess damages based on evidence in addition to the Complaint, and the Court must hold a hearing unless the record supports Plaintiff's damages request. Considering the straightforward nature of this breach of contract case, and in light of the documents Plaintiff has provided, the undersigned is able to determine damages based on the record and without holding an evidentiary hearing. In addition to the Complaint, the Affidavit of Ms. Parks' establishes that on August 13,

2021, the check, totaling an amount of $390,000.00, was deposited into the Account at an ATM in Columbia, Maryland. (ECF No. 10-2 at p. 2, ¶ 4). The check was issued by Williams Brian. *Id.* Furthermore, after Defendant transferred the majority of provisional proceeds for the check from the Account , the check was determined to be counterfeit, and this determination was followed by the Account consequently becoming overdrawn. *Id.* at p. 2, ¶ 5. Ms. Parks, under oath, further states that the overdraft resulted in Plaintiff incurring a principal loss of $330,768.21. *Id.* at p. 2, ¶ 6. Ms. Parks further states that Defendant has yet to repay this amount and that Plaintiff has suffered a corresponding loss due to the overdraft. *Id.* at p. 2, ¶¶ 7 & 9. Therefore, the undersigned recommends damages in the amount of $330,768.21. *See Petrone*, 2022 WL 9353510 (considering almost identical statements by Ms. Parks concerning the deposit of a counterfeit check, a principal loss incurred due to an overdraft, and the defendant's failure to pay Plaintiff for the principal loss).

### 2. Prejudgment Interest

As discussed above, Plaintiff has failed to indicate which states substantive law applies to this case. Therefore, the undersigned is unable to adequately determine the appropriateness of awarding prejudgment interest without Plaintiff providing facts that clarify which state's substantive law applies. Accordingly, the undersigned recommends that Plaintiff's request for prejudgment interest be denied without prejudice as to Plaintiff's ability to renew the issue with appropriate support within fourteen (14) days of an order from the Court granting default judgment.

### C. Attorneys' Fees and Costs

As discussed above, it is unclear whether the undersigned should implement Maryland law or South Dakota law in assessing attorneys' fees. However, the similarity of each potentially

applicable method for assessing such fees permits the undersigned to assess the reasonableness of

Plaintiff's attorneys' fees request.

### 1.  Applicable Law

#### a.  Fourth Circuit Precedent

To calculate an award of reasonable attorneys' fees, courts in the Fourth Circuit follow a

three-step procedure.  "First, the court must 'determine the lodestar figure by multiplying the

number of reasonable hours expended times a reasonable rate.'"  *McAfee v. Boczar*, 738 F.3d 81,

88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.

2009)).  A trial court may exercise its discretion in calculating the lodestar amount because it

possesses a "superior understanding of the litigation, and the matter is essentially factual."  *Jahn*

*v. Tiffin Holdings, Inc.*, No. SAG-18-1782, 2020 WL 4436375, at *1 (D. Md. Aug. 3, 2020) (other

citations and internal quotation marks omitted).  In exercising its discretion, "the Court is bound

to apply the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19

(5th Cir. 1974)."  *McAfee*, 738 F.3d at 88 (other citation omitted).  The *Johnson* factors, as

characterized by the Fourth Circuit in *McAfee*, include:

> (1) [T]he time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4) the
> attorney's opportunity costs in pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the outset of the litigation; (7) the
> time limitations imposed by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the experience, reputation and ability of
> the attorney; (10) the undesirability of the case within the legal community in which
> the suit arose; (11) the nature and length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards in similar cases.

*Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702, 712–13 (D. Md. 2015) (citing *McAfee*, 738 F.3d

at 88, n. 5).  Once the undersigned determines the lodestar amount, it "must 'subtract fees for hours

spent on unsuccessful claims unrelated to successful ones.'"  *McAfee*, 738 F.3d at 88 (quoting

16

*Robinson*, 560 F.3d at 244). "Finally, the court must analyze the degree of success enjoyed by the plaintiff, and determine whether the entire claimed fees amount, or some percentage of that amount, is a reasonable award." *Jahn*, 2020 WL 4436375, at *2 (other citations and internal quotation marks omitted).

As the Fourth Circuit's discussion in *McAfee* illustrates, courts have been less than consistent in determining whether the *Johnson* factors "inform the calculation of the lodestar," whether they instead should be used to make "upward or downward adjustments to it," or whether they should serve "both purposes." *McAfee*, 738 F.3d at 89. Without determining which, if any, approach is correct, the Fourth Circuit noted with approval that determination of the lodestar multipliers often subsumes consideration of many of the *Johnson* factors. *Id.* at 89–90. When considering the total number of hours expended, the Court generally considers factors one, two, and seven. In assessing the reasonableness of the rates charged per hour, factors three, four, five, six, nine, eleven, and twelve are potentially relevant. However, it is the trial court's duty to determine which *Johnson* factors are relevant to the determination of reasonable fees in a particular case." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. CIV.A. MGJ-95-309, 2002 WL 31777631, at *6 (D. Md. Nov. 21, 2022).

### b. Maryland Law[10]

"Maryland follows the 'American Rule,' under which a prevailing party is not awarded attorneys' fees unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a

---

[10] On December 14, 2022, "the former Court of Appeals of Maryland [was] renamed the Supreme Court of Maryland and the Court of Special Appeals [was] renamed the Appellate Court of Maryland." MARYLAND COURTS, *Appellate Courts*, https://www.mdcourts.gov/opinions/opinions (last visited Mar. 9, 2023). "This is a change in name only and does not affect the precedential value of the opinions of the two courts issued before the effective date of the name change." *Id.*

plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution." *Xerox Corp. v. SMS Prods., Inc.*, No. ELH-21-01606, 2022 WL 13937486, at *9 (D. Md. Oct. 24, 2022) (other citations and internal quotation marks omitted). "In a statutory fee-shifting case, courts generally employ the 'lodestar method' in calculating what attorneys' fees and costs are to be awarded." *Cong. Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489 503 (2011) (other citation omitted). "Fee shifting statues, the [Maryland] Court of Appeals has explained, are usually designed to encourage suits that, in the judgment of the legislature, will further public policy goals." *Id.* at 504 (other citations and internal quotation marks omitted). "That is why the lodestar method includes such factors as the 'undesirability' of the case . . . and its public impact . . . ." *Id.* (other citation omitted). "However, the Maryland Court of Appeals has held that the lodestar approach is an inappropriate mechanism for calculating fee awards under contractual fee-shifting provisions in disputes between private parties over breaches of contract."[11] *Xerox Corp.*, 2022 WL 13937486, at *10 (citing *Monmouth Meadows*, 416 Md. at 336 (other citation omitted)). Maryland courts consider the lodestar approach to be inappropriate in breach of contract cases involving private parties because "[a] contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Cong. Hotel Corp.*, 200 Md. App. at 505.

---

[11] Notably, Plaintiff's Motion asserts the applicability of the lodestar method adopted by the Fourth Circuit. (ECF No. 10-1 at pp. 5–7). Plaintiff's discussion of the lodestar method is accompanied by citations to Fourth Circuit opinions and opinions from this Court. *Id.* at pp. 6–7. However, Plaintiff does not discuss the entire three-step process the Court is bound to follow, i.e., Plaintiff makes no mention of reducing the lodestar amount for unsuccessful claims, nor does Plaintiff discuss reducing the lodestar amount based on the success enjoyed by Plaintiff. Ultimately, no such reductions will be made in this Report and Recommendations. However, Plaintiff's discussion regarding the lodestar factors and several Fourth Circuit-based opinions is odd in light Mr. Abbruscato's declaration citing Maryland caselaw discussing Maryland's relevant attorneys' fees factors. The undersigned says this to further cement the notion that a party bringing any motion before this Court should strive to provide enough material for the Court to determine which law it must apply, and a party should thoroughly lay out the legal standard it desires for the Court to utilize in determining the party's motion.

Instead, "[i]n awarding fees based on a contract entered by the parties authorizing an award of fees, a court should . . . use the factors set forth in rule 1.5 [of the Maryland Lawyers' Rules of Professional Conduct] as the foundation for analysis of what constitutes a reasonable fee." *Cong. Hotel Corp.*, 200 Md. App. at 499 (quoting *Monmouth Meadows Homeowners Ass'n v. Hamilton*, 416 Md. 325, 336–37 (2010)) (internal quotation marks omitted). Those factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Hamilton*, 416 Md. at 336–37 (quoting Md. Lawyers' R. Prof'l Conduct 1.5(a)). "In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately." *Xerox Corp.*, 2022 WL 13937486, at *11 (other citations omitted). Indeed, a court need not make explicit findings with respect to Rule 1.5 at all, or even mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness." *Id.* (quoting *Monmouth Meadows*, 416 Md. at 340, n. 13) (internal quotation marks omitted). However, "[i]n awarding attorney's fees based on a contractual fee and cost shifting provision, a trial court may consider, in its discretion, any other factor reasonably related to a fair award of attorney's fees and should consider the amount of the fee award in relation to the principal amount in litigation." *Cong. Hotel Corp.*, 200 Md.

App. at 500 (other citation omitted).  "[T]he trial court's determination of the reasonableness of attorney's fees is a factual determination within the sound discretion of the court, and will not be overturned unless clearly erroneous."  *Id.* (other citations and internal quotation marks omitted).

"Despite the policy differences underlying [Maryland's approach and the lodestar method], they have many features in common . . . ."  *Id.* at 505.  "[T]he factors in Rule 1.5 are identical or similar to the factors in the lodestar method."  *Id.* (citing *Friolo v. Frankel*, 373 Md. 501, 527 (2003)).  "In fact, the difference in the number of factors, twelve in the lodestar method versus eight in Rule 1.5, is due, in large part, to the fact that the first factor of Rule 1.5 includes three factors of the lodestar method."  *Cong. Hotel Corp.*, 200 Md. App. at 505.  After that, the only remaining difference between the two approaches is that the lodestar method includes an 'awards in similar cases' factor and an 'undesirability of the case' factor, which Rule 1.5 does not."  *Id.*

The undersigned concludes that whether it applies the Fourth Circuit's typical lodestar method or Maryland's approach, the award of attorneys' fees will be the same.

### c.  South Dakota Law

"South Dakota follows the American rule of attorneys' fees, which provides that each party is responsible for their own fees."  *Stern Oil Co., Inc.*, 908 N.W.2d at 157 (other citation omitted). However, "an award of attorneys' fees is allowed when authorized by the parties' agreement or by statute."  *Id.* (other citations omitted).  "Thus, even if no statute authorizes an award of attorneys' fees, they are recoverable if the parties' contract so provides."  *Id.* (other citations and internal quotation marks omitted).  The trial court "has discretion to determine the amount of costs and attorney's fees that are reasonable."  *Id.* at 159, n. 7.  "In assessing reasonableness, the circuit court must consider a number of factors, including the results obtained and:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if

apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Id.* (other citations omitted). "No single factor determines whether attorney fees should be awarded, but rather all of the factors should be taken into consideration in determining a reasonable fee." *Id.* (other citations and internal quotation marks omitted). "However, before considering any of the factors listed above, the calculation of attorney fees must begin with the hourly fee multiplied by the attorney's hours." *Id.* (other citation and internal quotation marks omitted).

South Dakota law provides for the identical eight factors provided for by Maryland law in determining reasonable attorneys' fees. Whether the undersigned applies the Fourth Circuit's typical lodestar method, Maryland's approach, or South Dakota's approach, the award of attorneys' fees will be the same. Accordingly, the undersigned will consider all eight factors relevant to the Maryland and South Dakota approaches, and the undersigned will further apply this Circuit's precedentially-supported approach.

### 2. Lodestar Amount

#### a. Reasonable Hours

"The burden is on the prevailing party to provide time sheets sufficiently detailed to justify the hours sought." *Carranza v. Ramirez*, No. PWG 20-cv-2687, 2022 WL 4080310, at *2 (D. Md. Sept. 6, 2022) (other citation omitted). "This generally consists of an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent." *Id.* (other citation omitted). The hours presented by the petitioner "must be reasonable and represent the product of billing judgment." *Chapman v. Ourisman Chevrolet, Co.*, No. AW-08-2545, 2011 WL

2651867, at *15 (D. Md. July 1, 2011) (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)).

Plaintiff contends that its counsel expended a total of 60.10 hours on Plaintiff's case. (ECF No. 10-1 at p. 7). Plaintiff further contends that 60.10 hours worked amounts to $15,308.72 in attorneys' fees. *Id.* Regarding the breakdown of hours amongst individual lawyers and paralegals, the hours requested are as follows:

(a) Amy Rubin (Partner): 0.20 hours;

(b) Seth B. Burack (Partner): 5.20 hours;

(c) Philip T. Abbruscato (Associate): 49.20 hours; and

(d) Elaine Wimer (Paralegal): 5.50 hours.

*Id.* Plaintiff supports the reasonableness of this request with a detailed billing record (ECF No. 12) and a declaration from Plaintiff's counsel, Mr. Abbruscato (ECF No. 10-3). However, in calculating the proffered 60.10 hours of work, Mr. Abbruscato—who also serves as his firm's custodian of record in this matter—included 3.50 anticipated future hours of work. (*Id.* at p. 6, ¶ 17). Specifically, Mr. Abbruscato projected himself working 1.50 additional hours, Mr. Burack working 1.50 additional hours, and Ms. Wimer working 0.50 additional hours prior to the Court closing the case. *Id.* The undersigned declines to consider "Plaintiff's calculation of future work that may occur after the Court's entry of default judgment against Defendant." *Petrone*, 2022 WL 9353510, at *4. "Such a determination would require the Court to engage in a speculative analysis as to how much future work <u>might</u> be performed, which strays from the objective and concrete bases that the calculation of the lodestar figure rests on." *Id.* (emphasis in original). Accordingly, the undersigned begins his analysis by considering the following hours of work:

(a) Amy Rubin (Partner): 0.20 hours;

(b) Seth B. Burack (Partner): 3.70 hours;

(c) Philip T. Abbruscato (Associate): 47.70 hours; and

(d) Elaine Wimer (Paralegal): 5.00 hours.

First, the undersigned must strike the hours Plaintiff's counsel billed for clerical work. "Clerical work is not properly billable as legal fees to one's adversary even if it is performed by a paralegal or assistant." *Carranza*, 2022 WL 4080310 at *3 (other citation and internal quotations omitted). Plaintiffs detailed billing record includes tasks properly classified as clerical, such as entries for issuing summonses and filing documents. *See Ramirez v. 316 Charles, LLC*, No. CV SAG-1903252, 2021 WL 662185, at *3 (D. Md. Feb. 19, 2021), *appeal dismissed sub nom. Ramirez v. 9400 Snowden River, LLC*, No. 21-1216, 2021 WL 3776329 (4th Cir. Apr. 22, 2021) (citing cases discussing examples of clerical work, including scanning and mailing documents, issuing summonses, creating notebooks or files, and updating attorney's calendars); *Pfieffer v. Schmidt Baking Co.*, No. CIV. CCB-11-3307, 2014 WL 1291814, at *4 (D. Md. Mar. 28, 2014) (deducting time spent on purely administrative tasks such as electronically filing documents and preparing a package). If a time entry contains both substantive and clerical work, the Court will reduce the billed hours by .10. *See Ramirez*, 2021 WL 662185, at *3 (reducing the time billed by .10 hours where a clerical task was "subsumed within a larger billing entry, e.g., reviewing and editing a motion, and then filing the motion). Furthermore, as the burden of establishing reasonable attorneys' fees is on the party requesting such fees, the undersigned removes any billing entry that is insufficiently detailed. The Court's initial adjustments to Plaintiff's counsel's claimed hours are as follows:

| DATE | TIMEKEEPER/ DESCRIPTION | RATE/ HOUR | PROPOSED HOURS | ADJUSTED HOURS |
|---|---|---|---|---|
| 9/23/22 | Wimer | $179.20 | 1.4 | 0.00 |

| | | | | |
|---|---|---|---|---|
| | Finalize complaint for filing in USDC D. MD. (0.6) and prepare the civil cover sheet (0.3) summons (0.2) and local rule 103.3 disclosure of corporate interest forms (0.3) for filing. | | | |
| 9/27/22 | Wimer<br><br>Prepare complaint, civil cover sheet, summons and the local rule 103.3 financial disclosure statement for filing in the United states District Court of Maryland. | $179.20 | 0.3 | 0.00 |
| 9/29/22 | Wimer<br><br>Initiate case to e-file complaint, civil cover sheet, summons and rule 103.3 financial disclosure statement in the district of Maryland CM/ECF system. | $179.20 | .5 | 0.00 |
| 10/04/22 | Wimer<br><br>Teleconference with the district of Maryland court's clerk regarding instructions for addressing adjustments to the previous filing of the complaint, civil cover sheet, summons and rule 103.3 corporate disclosure statement (0.4); and revise documents accordingly fr filing (0.1). | $179.20 | 0.5 | 0.00 |
| 10/05/22 | Abbruscato<br><br>Review court issued summons in preparation for service alongside complaint. | $262.00 | 0.2 | 0.00 |
| 10/05/22 | Wimer<br><br>Obtain summons issued by the District court of Maryland (0.1) and prepare email correspondence to counsel regarding the same (0.2) | $179.20 | .3 | 0.00 |
| 10/06/22 | Wimer<br><br>Coordinate service of process on Defendant Gateway International | $179.20 | 0.6 | 0.30 |

| | Logistics (0.3) and prepare service package regarding the same (0.3) | | | |
|---|---|---|---|---|
| 10/12/22 | Abbruscato<br><br>Review notification of service of summons and complaint on registered agent. | $262.00 | 0.2 | 0.00 |
| 10/12/22 | Wimer<br><br>Confirm the status of service on Gateway International Logistics, Inc. C/O Fabion Harris, registered agent (0.2) and prepare email correspondence to counsel regarding the same (0.1) | $179.20 | 0.3 | 0.00 |
| 10/13/22 | Wimer<br><br>Review executed affidavit of service for Gateway International Logistics, Inc. (0.1) and prepare email correspondence to counsel regarding the same (0.1) | $179.20 | 0.2 | 0.00 |
| 10/17/22 | Wimer<br><br>Email correspondence exchange with Freestate Process servers regarding corrections to be made to the affidavit of service (0.1), (0.1) | $179.20 | 0.2 | 0.00 |
| 10/19/22 | Wimer<br><br>Prepare affidavit of service (summons -executed) for filing | $179.20 | 0.4 | 0.00 |
| 10/24/22 | Burack<br><br>Review affidavit of service (0.1) and consideration of default strategy (0.1) re: next week's deadline for Gateway to respond to complaint | $259.80 | 0.2 | 0.1 |
| 11/08/22 | Abbruscato<br><br>Assess returned executed summons of service of complaint on Defendant. | $262.00 | 0.2 | 0.00 |
| 11/11/22 | Wimer | $179.20 | .3 | .20 |

|  | Draft request for default judgment (.2); prepare same for filing in the District of Marylands CM/ECF system (.1). |  |  |  |
|---|---|---|---|---|
| 1/31/22 | Burack<br><br>Communicate (in firm) | $259.80 | .1 | 0.00 |

**TOTAL REDUCTIONS PER PERSON:**

- Mr. Abbruscato: 0.60 hours
- Mr. Burack: 0.20 hours
- Ms. Wimer: 4.50 hours

At this point, the undersigned is considering the following requested hours:

(a) Amy Rubin (Partner): 0.20 hours;

(b) Seth B. Burack (Partner): 3.50 hours;

(c) Philip T. Abbruscato (Associate): 47.10 hours; and

(d) Elaine Wimer (Paralegal): 0.50 hours

(e) **Total: 51.30 hours.**

In addition to the reductions for clerical work recorded, there are several reasons why the proffered hours warrant reduction. First, this matter is by no means complex, nor has Plaintiff's counsel asserted otherwise. Absent a date and signature block, the Complaint itself is barely four pages long. (ECF No. 1). The facts relevant to the Complaint present one of the most straightforward breach of contract claims the undersigned has considered. Furthermore, Plaintiff's citations to any caselaw in its filings are entirely in regard to the methodology of the Court's calculation of attorney's fees and costs. Astoundingly, including drafting, researching, and corresponding with Plaintiff, Plaintiff's counsel spent roughly 36.40 hours working through this Court's default process. Plaintiff's Request for Entry of Default (ECF No. 5) was less than two pages, inclusive of a signature block and certificate of service. Plaintiff's Memorandum

supporting the current Motion for Default Judgment was barely more than eight (8) pages, excluding a signature block and certificate of service.  The portion of the Memorandum arguing for attorney's fees and costs was longer and supported by more caselaw than Plaintiff's argument regarding the appropriateness of default judgment as to Plaintiff's breach of contract claim.  *See* (ECF No. 10-3).

Although it cites the factors relevant to the undersigned's analysis, Plaintiff's counsel makes almost no effort to provide its own analysis of those factors.  The undersigned concludes that 51.30 hours billed for this matter is unreasonable. Specifically, the amount of hours billed by Mr. Abbruscato—counsel of record and the attorney who billed the vast majority of hours as the lead attorney in this case—is unreasonable.  The undersigned recommends that Mr. Abbruscato's hours be reduced by approximately forty percent; such a reduction establishes Mr. Abbruscato's reasonably billed hours as 29.00 hours.  *See TRS Inc. v. Am. Build & Design, Inc., et al*, No. ELH-14-1543, 2014 WL 3845941, at *5 (D. Md. Aug. 1, 2014) (reducing the requested 26.5 hours to 16.5 hours in a breach of contract case because the Complaint was barely six pages long, and the Motion for default was barely four paragraphs and lacked any citation to caselaw).  As such, the total hours reasonably billed for this case are as follows:

(e)  Amy Rubin (Partner): 0.20 hours;

(f)  Seth B. Burack (Partner): 3.50 hours;

(g)  Philip T. Abbruscato (Associate): 29.00 hours; and

(h)  Elaine Wimer (Paralegal): 0.50 hours.

(i)  **Total Reasonable Hours: 33.20 hours.**

Therefore, the undersigned determines that, for the purposes of the lodestar calculation, Plaintiff's counsel reasonably billed for a total of 33.20 hours.  *Osorio de Zavala v. Tortilleria El*

*Volcan, LLC*, 2019 WL 2366363, at *10 (D. Md. June 4, 2019) (deeming 27.2 hours to be reasonable "as Defendants defaulted, [and] Plaintiffs were presented with no opposition to their presentation of the facts of the situation.").

### b. Reasonable Hourly Rates

The fee applicant must "establish the reasonableness of a requested rate." *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (other citation omitted). In addition to the attorney's own affidavits, "the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award . . . ." *Orellana v. ACL Cleaning, LLC*, No. DKC 19-2318, 2022 WL 3586513, at *2 (other citation omitted). Such specific evidence should include, for example, "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* (other citation omitted). The Court's Local Rules provide non-binding guidelines regarding reasonable hourly rates that vary depending on how long an attorney has been admitted to the bar. Those rates are as follow: $150–225 for lawyers admitted to the bar less than five years; $165–300 for lawyers admitted for five to eight years; $225–350 for lawyers admitted for nine to fourteen years; $275–425 for lawyers admitted for fifteen to nineteen years; and $300–475 for lawyers admitted for twenty years or more. The rate for paralegals and law clerks is $95–150.

The undersigned is concerned with two aspects of Plaintiff's counsel's requested hourly rates: (1) Mr. Abbruscato's and Ms. Wimer's requested hourly rates are above the guidelines' rates, and (2) little evidence is offered regarding the skill and credentials of anyone who billed hours for this case. The undersigned will first address its concern regarding Mr. Abbruscato's and Ms. Wimer's hourly rate.

28

Enhancements above the guidelines' rates "should be applied sparingly and in exceptional cases." *Carranza*, 2022 WL 4080310, at *4 (other citation and internal quotation marks omitted). The declaration of Mr. Abbruscato states that "the attorney rates charged by Fox Rothschild are reasonable and within the range of appropriate market rates charged by attorneys with comparable experience levels for litigation of a similar nature, given their experience level and background, for litigation pending in the District of Maryland." (ECF No. 10-3 at p. 6, ¶ 16). However, despite recognizing counsel's customary rates as a *Johnson* factor in determining reasonable hourly rates, "customary rates are not dispositive . . . and indeed, the Appendix B rates are more representative of a broader range of fees charged by practitioners appearing in federal court in Maryland." *Carranza*, 2022 WL 4080310, at *5 (other citations and internal quotations omitted). Furthermore, "the fact that the Appendix B rates were set eight years ago does not automatically mean they no longer reflect market rates[.]" *Id.* "This Court has continued to apply these rates through 2021[]" and 2022. *See, e.g.*, *id.*

Nothing about the case *sub judice* warrants an enhancement of hourly fees above the guidelines. As to factor three, obtaining a default judgment based upon a failure to answer in a straightforward contract case does not require an exceptional level of skill by counsel. As to factor four, Plaintiff's counsel has not argued that it was unable to pursue other matters due to the acceptance of this case. As to factor six, Plaintiff's counsel indicates that Plaintiff agreed to pay "for services rendered at a discounted rate." (ECF No. 10-1 at p. 8, n. 2). Such an agreement cuts against an enhancement above the guidelines because counsel took no risk in obtaining payment. Furthermore, although a default judgment will be a success for Plaintiff, it is not one warranting any enchantment above the guidelines. Lastly, although the amount in controversy is significant, Plaintiff is receiving through a default judgment the amount that would be expected, absent

prejudgment interest prior to Plaintiff's further clarifications on that issue.  In consideration of all the relevant *Johnson* factors, the undersigned recommends awarding Mr. Abbruscato an hourly rate of $200.00/hour.  This is reasonable considering that Mr. Abbruscato has been licensed to practice law in Maryland since 2020, is an associate at Fox Rothschild LLP, and provides no further documentation in his declaration regarding his skill and credentials.  *See* (ECF No. 10-3). As to Ms. Wimer, the undersigned recommends an hourly rate of  $125.00/hour.  This is reasonable considering that Ms. Wimer has been a paralegal since 1979, her involvement in this case was predominantly clerical, and no other evidence regarding her skill or credentials has been offered.

As to Ms. Rubin and Mr. Burack, the undersigned recognizes that their involvement with the case was minimal and that very little information regarding their level of skill and experience has been made available.  However, the undersigned does acknowledge that Ms. Rubin is a senior partner at Plaintiff's counsel's firm, and she has been practicing law since 1985.  *Id.* at p. 3, ¶ 7. Mr. Burack is a partner at Plaintiff's counsel's firm, and he has bene practicing law since 2009. Mr. Burack's and Ms. Rubin's requested hourly rates are within the guidelines for their respective years of experience.  Therefore, in consideration of the *Johnson* factors already considered during the undersigned's analysis of Mr. Abbruscato's and Ms. Wimer's hourly rates, the undersigned recommends awarding Ms. Rubin an hourly rate of $408.80/hour, and I recommend awarding Mr. Burack an hourly rate of $259.80/hour.

### c.  Lodestar Calculation

The undersigned's final lodestar calculation is as follow:

(a) Amy Rubin (Partner): 0.20 hours X $408.80/hour = $81.76

(b) Seth B. Burack (Partner): 3.50 hours X $259.80/hour = $909.30

(c) Philip T Abbruscato (Associate): 29.00 hours X $200.00/hour = $5,800.00

(d) Elaine Wimer (Paralegal): 0.50 hours X $125.00/hour = $62.50

(e) **Final Lodestar Amount: $6, 853.56.**

As to factor twelve concerning attorneys' fees awards in similar cases, the undersigned recognizes its calculated lodestar amount as conformable and comparable to awards granted in similar cases. *See, e.g.*, *Petrone*, 2022 WL 9353510, at *4 (awarding $8,245.14 in attorney's fees); *Bockai v. Ruvanni Inc., et al*, No. PJUM 18-417, 2018 WL 3057725 (D. Md. June 20, 2018) (awarding $3,500 in attorney's fees for a breach of contract claim ending in default judgment); *Wells Fargo Bank, N.A. v. Simms Firm, PLC*, No. 1:20-cv-41 (TSE/TCB), 2020 WL 10090791 (E.D. Va. July 10, 2020) (breach of contract claim wherein the court awarded $3,842.00 after entering default judgment).

### 3.   Reductions to the Lodestar Amount

Plaintiff's case should end in a default judgment.  Because Plaintiff's unjust enrichment claim was pleaded in the alternative to Plaintiff's successful breach of contract claim, the undersigned does not find that Plaintiff pursued any "unsuccessful claims."  Furthermore, Plaintiff stands to enjoy a substantial amount of success in that the undersigned recommends that Plaintiff receive the total compensatory damages Plaintiff sought when filing the Complaint. The only amount the undersigned does not recommend awarding Plaintiff at this juncture is prejudgment interest, but Plaintiff should be given the opportunity to request prejudgment interest in the future after clarifying which state's laws should govern such an award.  Accordingly, the undersigned does not recommend any further reductions to the lodestar amount of $6,853.56.

### 4.   Costs

Plaintiff seeks the following costs: (1) $42.27 for "messenger service/federal express," (2) $402.00 for "court filings," and (3) $90.00 for "serve process."  (ECF No. 12 at pp. 8, 15, & 18). These expenses total $534.27.  In *Roger E. Herst Revocable Trust*, this Court determined an award of attorneys' fees and costs in a breach  of lease case.  After a bench trial ending in favor of the plaintiffs, the plaintiffs filed a motion for attorneys' fees.  *Roger E. Herst Revocable Trust*, 2011 WL 6444980, at *1.  Because the Court had subject matter jurisdiction based upon the diversity of the parties and the amount in controversy, the Court applied Maryland Lawyers' Rule of Conduct 1.5 in assessing reasonable attorneys' fees and costs.  *See id.* at *1–11.  Specifically, the plaintiffs sought "expenses totaling $406.63 for filing fees, messenger services, [and] postage . . . ." *Id.* at *3, n. 7.  Citing to 28 U.S.C. § 1920,[12] the Court recognized that some of these expenses "are costs that are ordinarily taxable to the prevailing party, in the absence of an applicable fee-shifting provision." *Id.*  The Court recognized the expenses as reasonable and "recoverable by plaintiffs under the fee-shifting provision in the Lease." *Id.*  Therefore, the Court awarded the plaintiffs their requested expenses. *Id.*

Here, some of Plaintiff's requested costs are costs that are ordinarily taxable to the prevailing party under 28 U.S.C. § 1920.  *See Roger E. Herst Revocable Trust*, 2011 WL 6444980, at *3, n. 7.  To the extent the requested costs are not ordinarily taxable as costs, the undersigned finds them recoverable pursuant to the Agreement.  Accordingly, the undersigned recommends awarding Plaintiff costs in the amount of $534.27.

---

[12] A judge or clerk of any court of the United States may tax as costs . . . [f]ees of the clerk and marshal . . . ."  28 U.S.C. § 1920.

## IV.     CONCLUSION

For the reasons set forth above, the undersigned recommends that:

1.  The Court GRANT in part Plaintiff's Motion for Entry of Default Judgment Pursuant to Rule 55(b)(2) (ECF No. 10);

2.  The Court enter an order granting default judgment in favor of Plaintiff as to Count I.  Such an order granting default judgment as to Count I should also award Plaintiff compensatory damages in the amount of $330,768.21;

3.  Plaintiff should be awarded attorneys' fees in the amount of $6,853.56;

4.  Plaintiff should be awarded costs in the amount of $534.27; and

5.  Within fourteen (14) days of the Court issuing an order of default judgment in favor of Plaintiff, Plaintiff should be permitted to file a renewed request for prejudgment interest establishing which state's substantive law should be used in determining that issue.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Date: <u>March 13, 2023</u>                                              /s/
                                                            J. Mark Coulson
                                                            United States Magistrate Judge